IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CT-3185-FL

| | | |
|---|---|---|
| TONY A. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOHN GODFREY and MARSHALL PIKE, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 46) and to seal records filed in support thereof (DE 51). The motion for summary judgment was briefed fully and in this posture the issues raised are ripe for ruling.

### STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on June 21, 2021, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Pursuant to the operative amended complaint filed March 21, 2021, plaintiff alleges defendants were deliberately indifferent to health risks caused by exposure to second-hand tobacco and synthetic marijuana smoke, in violation of the Eighth Amendment to the United States Constitution. Plaintiff also asserts defendants failed to protect him from an assault by other

---

[1] The court constructively amends the case caption to reflect dismissal of plaintiff's claims against formerly named defendants State of North Carolina, Roy Cooper, and John Doe defendants on May 3, 2022.

inmates, and from inmates acting erratically after ingesting controlled substances. Defendants are John Godfrey, the former warden of the Harnett Correctional Institution ("HCI"), and Marshall Pike, the former associate warden of custody and operations at HCI. As relief, plaintiff seeks compensatory and punitive damages.

Following a period of discovery, and in accordance with the court's case management order, defendants now move for summary judgment. Defendants argue that the undisputed evidence shows they were not deliberately indifferent to any unconstitutional conditions of confinement, and that they are entitled to qualified immunity.

In support of the motion, defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) declaration of counsel; 2) plaintiff's Department of Adult Corrections ("DAC") custody records; 3) plaintiff's DAC housing assignments; 4) DAC policies and procedures regarding inmate conduct and discipline; 5) DAC press release regarding mail security; 6) plaintiff's medical records; 7) defendants' personal declarations; and 8) plaintiff's administrative grievance records.

Plaintiff responded in opposition to the motion, relying on memorandum of law and appendix of exhibits comprising the following: 1) plaintiff's personal declaration; 2) plaintiff's medical records; 3) administrative grievances from plaintiff and third party witnesses Grant Hayes ("Hayes"), Daniel Strother ("Strother"), Linwood Duffie ("Duffie"), and Curtis Cardwell ("Cardwell"), all of whom were DAC inmates during the relevant time period; 4) correspondence from TextBehind, a third-party communications company, regarding new inmate mail policy; 5) plaintiff's disciplinary records; and 6) correspondence between plaintiff and various legal organizations.

**STATEMENT OF FACTS**

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. Plaintiff was housed at HCI from 2017 through most of 2021. (Pl's Decl. (DE 58-2) at 6; Pl's Housing Records (DE 49-3); Notice (DE 6)).[2] HCI is a non-smoking facility, and inmates are not allowed to possess or use tobacco or synthetic marijuana. (Offender Conduct Policy (DE 49-4) at 2).

To enforce the no-smoking policy, correctional officials must conduct rounds through the dorms and assess disciplinary charges against inmates caught with tobacco or "K2," a synthetic form of marijuana. (Godfrey Decl. (DE 49-15) ¶ 3; Pike Decl. (DE 49-16) ¶ 3; Pl's Mem. (DE 58) at 3 (plaintiff acknowledging the rounds policy)).[3] Plaintiff acknowledges that "most staff sign a log sheet as making rounds." (Pl's Mem (DE 58) at 3). However, according to plaintiff, officers often fabricate the entries by falsely stating that they completed rounds. (Id.).

Notwithstanding the no-smoking policy, during his time at HCI, plaintiff was exposed to both second-hand tobacco and K2 smoke. (Pl's Decl. (DE 58-2) at 6–8). The inmates smoking K2 "become aggressive, paranoid, and disoriented and [they] often projectile vomit." (Pl's App. Ex. 17 (DE 58-1) at 30). Correctional officers are aware of the K2 smoking and the "drug-induced psychotic breaks," but they do not remove intoxicated inmates from the housing units when this occurs. (Id.). As a result, plaintiff must defend himself against these intoxicated and dangerous inmates. (Id.). In addition, inmates smoking K2 cause disruptions at night, making it difficult to

---

[2] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

[3] Plaintiff's memorandum is signed and sworn under penalty of perjury, and thus it is appropriately considered when resolving the instant motion for summary judgment. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

3

sleep. (Id.). On two occasions, intoxicated inmates tried to get in plaintiff's bed, and plaintiff had to threaten one of them to resolve the situation. (Id. at 30–31). The inmate's friends became hostile and threatening to plaintiff after this incident. (Id. at 31).

The inmates using K2 also vomit in plaintiff's dorm, and the vomit is not appropriately cleaned afterwards, causing unsanitary living conditions. (Pl's App. Ex. 17 (DE 58-1) at 31). Correctional staff do not provide hazmat bags or bleach to clean the vomit, and the same mops used for general cleaning are used to remove the vomit, without changing the mop heads. (Id.).

Plaintiff experienced similar problems with exposure to K2 and tobacco use in each of the four dorms where he was housed at HCI. (Pl's App. Ex. 17 (DE 58-1) at 32). Nonetheless, inmates smoking K2 or tobacco are not regularly charged with disciplinary offenses under HCI's no smoking policy. (Id.).

In December 2020, plaintiff filed administrative grievance complaining about the exposure to tobacco and K2 smoke, and the behavior of the intoxicated inmates. (Pl's App. Ex. 17 (DE 58-1) at 30–34). In response, HCI officials stated that the facility is smoke-free, that officers "make rounds in each dormitory to ensure all policies and procedures are being followed," and "any inmates found to be smoking or under the influence of any controlled substance are charged under the inmate disciplinary system." (Id. at 36). Plaintiff appealed to step two of the grievance procedure, and defendant Pike denied the appeal for the reasons given at step one. (Id. at 37). Additional inmates filed grievances about the tobacco and K2 smoking at HCI, describing similar conditions, and alleging in general terms that defendants were aware of the smoking issues but failed to enforce the no-smoking policy. (See, e.g., Pl's App. Ex. 15 (DE 58-1) at 23; Pl's App.

4

Ex. 16 (DE 58-1) at 25–26; Pl's App. Ex. 18 (DE 58-1) at 39–44).

In addition to the grievances, plaintiff personally met with defendants on two occasions to complain about the smoking at HCI. (Pl's Decl. (DE 58-2) at 1). In May 2020, plaintiff encountered both defendants near the HCI medical unit, and asked them "what about all the tobacco and [K2] smoke and [inmates] smoking drugs in the dorms around here?" (Id. at 2). Defendants responded by stating they "understood that there was a problem with [drug use on] the unit, and they were attempting to "get to the root of the problem." (Id.). They told plaintiff to be patient as the investigatory process would "not happen overnight." (Id.).

On an unidentified date, plaintiff met with defendant Pike and correctional officer Davis when he was housed in the "G dorm." (Pl's Decl. (DE 58-2) at 2). Plaintiff "brought up the issue of the serious amount of smoke and [K2] use." (Id.). Officer David told plaintiff to send him a letter about the issues and he would look into it. (Id.). On the same day of this encounter, an inmate "tried to swallow" an unidentified controlled substance and defendant Pike assisted as other officers forced him to spit it out. (Id.). Plaintiff looked at Pike and held his hands up "in a please help" manner. (Id. at 3). However, only the inmate who ingested the controlled substance was removed from the housing unit, and the remaining inmates continued to smoke and use drugs after the officers left. (See id. at 2–3).

Furthermore, on several occasions in 2020 and 2021, while housed on the L and N dorms, plaintiff informed defendants of "the still ongoing and worsening tobacco and [K2] problem" at HCI. (Pl's Decl. (DE 58-2) at 3). Defendants responded that "they know of the problems with these substances, but [with] the loss of staff, . . . COVID-19 issues, [and other] staff issues, [defendants are] doing what [they] can." (Id.). Defendants refused plaintiff's request for transfer

to another correctional facility. (Id.). Plaintiff also complained about these problems to other correctional officers, one of whom stated they could not create smoke-free dorms because "that would acknowledge the institution is absolutely not smoke free." (Id. at 4).

Plaintiff also witnessed subordinate correctional officers falsify drug tests and conceal the smoking that was occurring at HCI. (Pl's Decl. (DE 58-2) at 5). For example, officer Anderson "lie[d] about the drug screen process" and told inmates that he would conceal their drug use from other officials. (Id.). Another officer sprayed perfume and other scented sprays "to cover up the smoke" from the K2 and tobacco. (Id.).

In 2020 and 2021, the second-hand K2 smoke "caused [plaintiff] to become very sick and have panic attacks at night." (Pl's Decl. (DE 58-2) at 6). During one panic attack, plaintiff fell off his bed and severely injured his left elbow. (Id.). Due to the exposure to second-hand smoke, plaintiff suffers from vision loss, severe migraines, and sleep disturbances. (Id. at 6–7). Following an assault by another inmate related to his reporting the tobacco and K2 use, plaintiff experienced arthritis, spinal problems, and muscle/nerve damage. (Id. at 8). Finally, plaintiff suffers from numerous mental health issues that were exacerbated by his exposure to K2/tobacco smoke and the dangerous environment at HCI. (Id. at 9).

## DISCUSSION

A. Motion for Summary Judgment

  1. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[4]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law

---

4    Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

Case 5:21-ct-03185-FL    Document 62    Filed 09/20/24    Page 7 of 16

is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

Plaintiff's challenges to his conditions of confinement arise under the Eighth Amendment to the United States Constitution, which proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prison officials must "provide humane conditions of confinement [by] ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016).

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Under the first prong, "a prisoner must establish . . . a serious or significant physical or emotional injury" or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014).

The deliberate indifference prong requires a showing that defendants knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837–38 (1994); Danser, 772 F.3d at 347. A plaintiff may establish deliberate indifference by

8

producing direct evidence showing the prison official had actual knowledge of the risk and failed to ameliorate the conditions. Farmer, 511 U.S. at 842–43. As an alternative, "a prison official's subjective actual knowledge can be proved through circumstantial evidence" by showing that the risk was "obvious" and that the circumstances suggest the defendants must have known about it. Makdessi, 789 F.3d at 133; see also Farmer, 511 U.S. at 842. The official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844; Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

The Supreme Court has held that unreasonable exposure to second-hand smoke can establish a claim under the Eight Amendment. See Helling v. McKinney, 509 U.S. 25, 33–35 (1983). As to the objective component, the inmate "must show that he himself is being exposed to unreasonably high levels of [second-hand smoke]." Id. at 35. This requires evidence showing "a scientific and statistical [basis for] the potential harm and the likelihood that such injury to health will actually be caused by exposure to [second-hand smoke]." Id. at 36. In addition, the court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id.

Here, plaintiff has not established the objective component of an Eighth Amendment claim to the extent this claim is premised solely on exposure to tobacco or K2 smoke. The medical records show that plaintiff does not suffer from any smoking-related conditions. (See Medical

9

Records (DE 50); Pl's Exs. 1-13 (DE 58-1) at 1–19). And plaintiff fails to provide any statistical or scientific evidence showing that the level of second-hand smoke he experienced at HCI could cause harm to his health. See Helling, 509 U.S. at 36; see also Shakka v. Smith, 71 F.3d 162, 168 (4th Cir. 1995) (requiring evidence showing "an unreasonable risk of damage to [the inmate's] future health" to survive summary judgment on the objective prong of an Eighth Amendment claim).

Plaintiff instead relies on indirect harms, such as falling out of his bed due to a panic attack, and injuries suffered during an assault by another inmate who learned he reported the inmate's K2/tobacco use. (See Pl's Decl. (DE 58-2) at 6, 8). But plaintiff fails to connect these harms specifically to exposure to second-hand smoke itself. See Helling, 509 U.S. at 36. While plaintiff indicates that second-hand smoke caused him to have panic attacks, he fails to provide any supporting medical or statistical documentation showing that connection. See id. And his arthritis, spinal problems, and muscle/nerve damage were caused by another inmate attacking him, not second-hand smoke.[5] (See Pl's Decl. (DE 58-2) at 8).

Plaintiff also asserts that he suffered from vision loss, severe migraines, and sleep disturbances due to second-hand smoke and that the second-hand smoke exacerbated his mental health conditions. (See Pl's Decl. (DE 58-2) at 6–7). But he fails to quantify the level of vision loss or explain specifically how the second-hand smoke was responsible for any of these conditions. See Helling, 509 U.S. at 36. Plaintiff cannot establish a triable issue of fact on the objective prong by relying on unsupported speculation and conjecture. See Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials,

---

[5] To extent plaintiff argues that defendants were deliberately indifferent to the risk of plaintiff being assaulted, the court addresses that claim below.

without more, are insufficient to preclude granting the summary judgment motion."); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (explaining "unsubstantiated allegations and bald assertions" cannot defeat a motion for summary judgment). Accordingly, defendants' motion for summary is granted as to the Eighth Amendment claim based on exposure to second-hand tobacco or K2 smoke, where plaintiff does not establish a triable issue of fact on the objective prong.

Separate from the exposure claims, plaintiff also relies on the risk of exposure to inmates who become violent and erratic after ingesting K2, and his risk of being assaulted by other inmates after he was labeled a snitch. With respect to these distinct claims, the court will assume without deciding that plaintiff offers sufficient evidence to withstand summary judgment on the objective component.

Turning next to the deliberate indifference analysis, plaintiff generally must show that defendants were aware of the second-hand smoke issues or other risks to plaintiff, and failed to respond reasonably to same. Farmer, 511 U.S. at 842–44; Odom, 349 F.3d at 770. Moreover, because defendants were supervisory officials and not involved directly in the supervision of the dorms, the theory of supervisory liability is relevant to plaintiff's claims. In order to proceed on a theory of supervisory liability, plaintiff must show: 1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; 2) the supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and 3) "there was an affirmative causal link" between the supervisor's inaction and the plaintiff's alleged injury. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

11

Here, as plaintiff acknowledges, HCI is a non-smoking institution. (Pl's Mem. (DE 58) at 3; Offender Conduct Policy (DE 49-4) at 2). And the fact that HCI implemented a non-smoking policy itself weighs against finding deliberate indifference, particularly with respect to the two highest-ranking officials at the institution. See Helling, 509 U.S. at 36 (stating that "adoption of the smoking policy . . . will bear heavily on the inquiry into deliberate indifference"); (Godfrey Decl. (DE 49-15) ¶ 2; Pike Decl. (DE 49-16) ¶ 2).

Defendants also went beyond the written policy and adopted procedures to enforce it. For example, subordinate officers must conduct rounds through the dorms and assess disciplinary charges against inmates caught with tobacco or K2. (Godfrey Decl. (DE 49-15) ¶ 3; Pike Decl. (DE 49-16) ¶ 3; Pl's Mem. (DE 58) at 3 (plaintiff acknowledging the rounds policy)). Plaintiff himself acknowledges that "most staff sign a log sheet as making rounds," which establishes that defendants require correctional officers to submit documentation that they in fact conduct the rounds. (Pl's Mem (DE 58) at 3).

Plaintiff argues that the rounds policy is not followed, and that unidentified officers falsify the records showing they conducted rounds. (See id.). But even assuming that is true, plaintiff does not offer evidence showing that defendants personally were aware that officers violated policy in this manner. (See id.). Accordingly, the existence of a non-smoking policy and procedures for enforcing same weigh heavily against finding deliberate indifference. Helling, 509 U.S. at 36; see also Danser, 772 F.3d at 347 (explaining that defendants must know of and disregard a substantial risk of harm to be liable under the Eighth Amendment).

Next, plaintiff maintains that defendants must have known about the tobacco and K2 smoking based on the number of grievances he and other inmates filed, the fact that some inmates

12

overdosed on K2, and plaintiff's complaints to defendants directly regarding these issues. (See Pl's App. Exs. 14, 15, 16, 17, 18 (DE 58-1) at 20–45 (administrative grievances); Pl's Decl. (DE 58-2) at 2–3). But defendants acknowledge that some K2 and tobacco enters the facility through contraband smuggling. (Godfrey Decl. (DE 49-15) ¶ 3; Pike Decl. (DE 49-16) ¶ 3). Defendants responded by delegating enforcement of the smoking policy to subordinate correctional officers, and plaintiff does not offer sufficient evidence showing that this was an unreasonable response to the smoking. (Godfrey Decl. (DE 49-15) ¶ 3; Pike Decl. (DE 49-16) ¶ 3). Indeed, the warden and associate warden are entitled to presume that subordinate correctional officials comply with policy. See Shaw, 13 F.3d at 799 (providing supervisory officials may be held liable only if they "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury").

It is true that the inmates describe in their administrative grievances extensive smoking on some of the housing units, and they suggest at times failure on the part of officers to enforce the ban. (See Pl's App. Exs. 14, 15, 16, 17, 18 (DE 58-1) at 20–45). But this evidence does not show that defendants personally were deliberately indifferent. As set forth above, they enacted a policy prohibiting smoking, required officers to make rounds enforcing the policy, and directed officers to charge inmates who violated the policy with disciplinary offenses. (Godfrey Decl. (DE 49-15) ¶ 3; Pike Decl. (DE 49-16) ¶ 3). The fact that this did not always occur on the units may be probative of a deliberate indifference claim against the unit officers, but it does not show that defendants disregarded a substantial risk of harm. Indeed, plaintiff does not provide specific evidence showing that these same correctional officers who violated the policy continued to do so after the grievances were filed, which might suggest that defendants themselves failed to respond

13

to the risk by not removing the officers. See Shaw, 13 F.3d at 799 (requiring evidence that supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"); (see generally Pl's App. (DE 58-1); Pl's Decl. (DE 58-2)).

Furthermore, the record establishes that defendants or their subordinates ordered drug testing of the entire dorm where plaintiff was residing, and put up flyers warning about the dangers of K2. (Pl's Decl. (DE 58-2) at 5; Pl's Mem. (DE 58) at 24; Pl's Mt. to Amend (DE 4) at 8).[6] This evidence suggests defendants were attempting to address the problem of K2 smoking on the unit. And the fact that other officers may have fabricated the tests does not standing alone suggest defendants themselves were deliberately indifferent. See Farmer, 511 U.S. at 842–44; Shaw, 13 F.3d at 799; (see Pl's Decl. (DE 58-2) at 5; Pl's Mt. to Amend (DE 4) at 8).

By way of a sworn motion to amend the complaint, plaintiff states in conclusory fashion that defendants concealed the increased drug use by enforcing a policy that limits officers' ability to call medical codes for K2 overdoses. (Pl's Mt. to Amend (DE 4) at 11). Plaintiff also asserts that defendants ordered subordinate officers not to drug test individuals who are visibly intoxicated. (Id.). But plaintiff offers no supporting evidence for these assertions, the latter of which is directly contradicted by plaintiff's assertions that correctional officials in fact drug tested his entire dorm. See Jessup v. Barnes Grp., Inc., 23 F.4th 360, 367 (4th Cir. 2022) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."); (Pl's Decl. (DE 58-2) at 5; Pl's Mt. to Amend (DE 4) at 8). In any event, these conclusory and unsupported assertions cannot establish a triable issue of fact on summary judgment. See Wai Man Tom, 980 F.3d at 1037;

---

[6] The motion to amend also is sworn under penalty of perjury. (DE 4 at 13).

14

Case 5:21-ct-03185-FL   Document 62   Filed 09/20/24   Page 14 of 16

Evans, 80 F.3d at 960.

Plaintiff also emphasizes that he spoke directly to defendants on several occasions regarding the K2 and tobacco smoke. (Pl's Decl. (DE 58-2) at 1–3). As noted above, however, defendants do not deny that inmates smoked K2 and tobacco at times on the unit. (Godfrey Decl. (DE 49-15) ¶ 3; Pike Decl. (DE 49-16) ¶ 3). And plaintiff acknowledges that defendant Godfrey told him they had commenced an investigation to identify the source of the contraband. (Pl's Decl. (DE 58-2) at 2). Plaintiff must show more than defendants' awareness of the problem to establish a claim for deliberate indifference. Farmer, 511 U.S. at 842–44; Shaw, 13 F.3d at 799. In light of the evidence set forth above, no reasonable juror could find that defendants personally disregarded a substantial risk of harm to plaintiff. See Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022) ("In general, good-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances.").

As noted above, plaintiff also asserts defendants failed to protect him from an assault by another inmate after he was labeled a snitch, and from intoxicated inmates who posed a threat to him after they ingested K2. As for these claims, plaintiff does not offer evidence showing defendants disregarded a substantial risk to plaintiff. See Danser, 772 F.3d at 347. For example, plaintiff does not attest that defendants personally were aware that he had been labeled a snitch in his dorms, or that he was otherwise in danger. (See generally Pl's Decl. (DE 58-2)). And to the extent plaintiff and other inmates' grievances may have alerted officials about the danger of intoxicated inmates, plaintiff has not shown that defendants responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices" for the same reasons explained above. Shaw, 13 F.3d at 799.

15

In sum, plaintiff fails to establish a triable issue of fact on his Eighth Amendment claims related to second-hand smoke, and failure to protect him from harm. Accordingly, defendants are entitled to judgment as a matter of law.

B.  Motion to Seal

Defendants move to seal plaintiff's medical records filed in support of the motion for summary judgment. The public has received adequate notice of the motion to seal. See In re Knight Publishing Co., 743 F.2d 231, 235 (4th Cir.1984). Regarding the documents the parties seek to seal in their entirety, no less drastic alternative to sealing is available because the private information appears throughout the filings sought to be sealed. See Doe v. Pub. Citizen, 749 F.3d 246, 265–66 (4th Cir. 2014). Plaintiff's interest in preserving the confidentiality of his private health conditions outweighs any public interest in disclosure. Accordingly, the court will seal these records.

## CONCLUSION

Based on the foregoing, defendants' motions for summary judgment (DE 46) and to seal (DE 51) are GRANTED. The clerk is DIRECTED to maintain the records at docket entry 50 under seal and to close this case.

SO ORDERED, this the 20th day of September, 2024.

LOUISE W. FLANAGAN
United States District Judge